IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA,

    Plaintiff,

  v.

RUSSELL E.L. BUTLER a/k/a BLACK JEANS,

    Defendant.

No. C 18-01973 WHA

**ORDER RE MOTION TO DISMISS OR STAY AND MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this insurance-coverage dispute, defendant moves to stay or dismiss this action pending resolution of an underlying tort action. Plaintiff moves for summary judgment. For the reasons stated below, defendant's motion to stay is **GRANTED**. Plaintiff's motion for summary judgment is **HELD IN ABEYANCE**.

**STATEMENT**

In June 2016, plaintiff American Bankers Insurance Company of Florida issued a rental insurance policy to defendant Russell Butler for his residence in Oakland, California. The policy had a $100,000 personal liability limit per occurrence and covered claims "brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence'" to which the coverage applied (Dkt. No. 1-1).

The policy contained certain exclusions and provided in relevant part:

1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to "bodily injury" or "property damage":

   [. . .]

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business."

The policy defined a "business" as:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in items (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured."

In December 2016, various individuals and companies planned an art and music event at a warehouse structure known as the "Ghost Ship." The Ghost Ship was also located in Oakland but was not the same as Butler's residence. At that time, Butler regularly performed music in addition to his full-time employment as an art installation technician at the San Francisco Museum of Modern Art. A terrible fire on the night of the Ghost Ship music event resulted in the deaths of thirty-six individuals and serious injuries to many others.

The various actions concerning the Ghost Ship fire have been consolidated and styled *In re Ghost Ship Fire Litigation*, Case No. RG16843631, pending in Alameda Superior Court. According to the master complaint in the consolidated action, Butler planned, organized, promoted, sold, advertised, and provided security and entertainment at the Ghost Ship music event. The defendants in the *Ghost Ship* action allegedly charged an entrance fee to the event and the master complaint further alleges that Butler was an artist "represented, managed, and/or

2

employed" by Opal Records.  Based on these allegations, the plaintiffs assert claims for, among other things, negligence, negligent hiring, premises liability, intentional infliction of emotional distress, and survival.

In August 2017, Butler tendered defense and indemnity under the insurance policy in connection with the *Ghost Ship* actions.  American Bankers accepted Butler's tender of defense and indemnity while reserving the right to dispute coverage.  In March 2018, American Bankers filed the instant action seeking a declaration that the insurance policy does not cover the claims made against Butler in the state court action and, accordingly, that American Bankers does not owe a duty to defend or indemnify Butler in that action (Dkt. No. 1).

Butler now moves to stay or dismiss this action in favor of the underlying actions pending in Superior Court.  American Bankers opposes the motion to stay and simultaneously moves for summary judgment on its sole claim for declaratory relief (Dkt. Nos. 18–19).  This order follows full briefing and oral argument.

**ANALYSIS**

District courts have broad discretion to stay or dismiss a claim for declaratory relief. *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011).  "Prudential guidance" for the exercise of that discretion is found in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), and *American States Ins. Co. v. Kearns*, 15 F.3d 142 (9th Cir. 1994). Specifically, the district court should seek to:  (1) avoid duplicative litigation; (2) discourage forum shopping; and (3) avoid needless determination of state law issues.  *Govt's Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  Here, these factors weigh in favor of staying this action, as now discussed.

**1.    AVOIDING DUPLICATIVE LITIGATION.**

A stay or dismissal of a declaratory relief action pending resolution of the underlying suit is appropriate "when the coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 301 (1993).  In such cases, a stay serves to "eliminate the risk of inconsistent factual determinations that could prejudice the insured." *Ibid*.  But, "when the coverage question is logically unrelated to the issues of

3

1 consequence in the underlying case, the declaratory relief action may properly proceed to
2 judgment." *Id*. at 302. This order finds that whether or not declaratory relief is appropriate in
3 this action will likely turn on issues to be resolved in the underlying *Ghost Ship* litigation.

4 The central issue in the complaint here is whether the claims against Butler in the *Ghost
5 Ship* litigation fall within the policy's "business" exclusion. American Bankers contends that it
6 does not have a duty to defend or indemnify Butler because the claims in the underlying actions
7 are premised on allegations that Butler was acting as a professional musician on the night of the
8 fire. Contrary to American Bankers, determining the scope of its duty to defend is *not* limited
9 to comparing the allegations in the underlying complaints with the terms of the insurance
10 policy. To be sure, "[t]he determination whether the insurer owes a duty to defend usually is
11 made in the first instance by comparing the allegations of the complaint with the terms of the
12 policy." *Id.* at 295. As American Bankers tacitly acknowledges, however, "facts known to the
13 insurer and extrinsic to the third party complaint can generate a duty to defend, even though the
14 face of the complaint does not reflect a potential for liability under the policy." *Id.* at 296.

15 American Bankers next argues that even if Butler attempted to rely on extrinsic facts to
16 demonstrate a duty to defend, no relevant facts exist because "it is undisputed Mr. Butler was a
17 musician at the time of the Ghost Shop Fire, had been for years, gave interviews, performed live
18 shows, and had released several albums." Not so. This is not a case in which extrinsic evidence
19 presents undisputed facts. Rather, the parties sharply dispute whether or not Butler's musical
20 activities amounted to a mere "hobby" at the time of the fire.

21 Under California law, "[a] business pursuit has been defined as a regular activity
22 motivated by profit or gain, including part-time or supplemental income projects." *State Farm
23 Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (Judge Marilyn Hall Patel);
24 *see also Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598, 618–19 (2003). But
25 while the typical "business" exclusion turns on a profit motive, "it is the type of activity, rather
26 than actual compensation, that controls" whether or not the exclusion applies. *Amex Assurance
27 Co. v. Allstate Ins. Co.*, 112 Cal. App. 4th 1246, 1252 (2003). Accordingly, one California
28 appellate court concluded that the exclusion applied to the defendant's installation of a water

heater done in the hopes that it would induce the recipient to pay for prior work. *Ibid.* Another California court applied the exclusion to a corporate director even though the director sat on the board as a favor to a friend and received no compensation. *Smyth v. USAA Prop. & Cas. Ins. Co.*, 5 Cal. App. 4th 1470, 1476 (1992).

This order concludes that the coverage issue presented here turns on facts to be litigated in the *Ghost Ship* actions. Moreover, resolution of those factual issues now could potentially prejudice Butler in the underlying actions. Before the undersigned judge could resolve American Bankers' declaratory judgment claim, there must be a determination as to whether or not Butler was engaged in a "business" as that term is defined in the policy. Notably, both American Bankers' complaint and its parallel motion for summary judgment refer to extrinsic evidence in advocating for a favorable resolution of the coverage issue. In turn, Butler declares that he did not engage in the Ghost Ship event to make money. He further states that at the time of the fire he worked full-time doing art installation work for SFMOMA (Dkt. No. 26-1). The parties' dispute accordingly turns on factual matters and not solely on the legal meaning of the business pursuits exclusion. As Butler points out, relevant inquiries include whether or not Butler promoted or organized the Ghost Ship event or expected to obtain proceeds from gate admissions. Determining these factual issues now could impact the resolution of the underlying tort actions and the standard of care applicable in those actions. This factor accordingly weighs in favor of abstention.

### 2. AVOIDING FORUM SHOPPING.

The second *Brillhart* factor is the interest in avoiding the use of declaratory judgments as a means of forum shopping. The typical case of forum shopping involves a plaintiff filing a federal action to "avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990). Nothing in the record indicates forum shopping. This factor does not weigh either way on this record.

### 3. AVOIDING NEEDLESS DETERMINATIONS OF STATE LAW.

The final *Brillhart* factor, avoiding needless determinations of state law, relates to unsettled issues of law generally, not unsettled issues of fact in the specific claim. *See Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991), *overruled on other grounds, Dizol*, 133 F.3d at 1226. While American Bankers' claim presents state law issues involving California insurance coverage, the issues concerning insurance coverage are not particularly complex or novel. As discussed above, however, proceeding with this claim would entail parallel litigation of disputed state law issues. This factor accordingly weighs in favor of a stay.

### CONCLUSION

For the foregoing reasons, Butler's motion to stay is **GRANTED**. This action is **STAYED** pending Butler's deposition and response to discovery requests in the *Ghost Ship* actions. Within **FOURTEEN CALENDAR DAYS** of the close of discovery in the underlying litigation, the parties shall submit five-page supplemental briefs addressing whether or not the stay should be lifted. A case management conference is hereby set for **MAY 2, 2019 AT 11:00 A.M.** Although at oral argument the undersigned judge stated that American Bankers' motion for summary judgment is denied, upon further reflection the motion for summary judgment is **HELD IN ABEYANCE** until the stay is lifted.

**IT IS SO ORDERED.**

Dated: August 2, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE